GEORGE E. PENNINGTON v. TOWN OF TARBORO.

(Filed 1 December, 1920.)

(For digest, see *Kornegay v. Goldsboro, post,* 441.)

CLARK, C. J., dissenting.

APPEAL by plaintiffs from *Connor, J.,* heard at chambers, 9 October, 1920, on case agreed, from EDGECOMBE.

This is an action to restrain the sale of bonds at less than par, as the defendant was authorized to do by an act of the General Assembly enacted at the Special Session, 1920.

There was a judgment in favor of the defendant, and the plaintiff appealed.

*Allsbrook & Philips for plaintiff.*
*Don Gilliam and J. L. Morehead for defendant.*

ALLEN, J.   This appeal is controlled by the decision in *Kornegay v. Goldsboro,* at this term, and upon that authority the judgment is
    Affirmed.

CLARK, C. J., dissenting: In this case the plaintiffs were taxpayers of Tarboro, who seek to restrain the commissioners of that municipality from selling at 94 the bonds of that municipality in violation of the general act, ch. 138, Laws 1917, which was passed, as recited in its preamble, as required by the amendment, sec. 4, Art. VIII, of the Constitution, adopted in November, 1916. Section 30 of said chapter 138 required that "All bonds of municipalities shall be sold by the governing body at not less than par."

The governing body of Tarboro were endeavoring to sell these bonds at 94 by virtue of a special act passed at the special session in August, 1920, notwithstanding the amendment to the Constitution required that all laws regulating the issuing of bonds, and the contracting of debts, should be enacted by *general laws.* The injunction against the sale of these bonds at less than par should have been granted.

The question presented is identical with that discussed in *Kornegay v. Goldsboro,* and I cannot add to what I said in an opinion in that case, which I adopt in this.

However, it is well to recall, as stated by *Judge Brown* in his opinion in *Kornegay v. Goldsboro, post,* 441, that the policy of this State was clearly expressed in sec. 4, Art. V, of the Constitution, which provided that, "Until the bonds of the State shall be at par, the General Assembly shall have no power to contract new debts or pecuniary obligations in behalf of the State, except to supply a casual deficit, or for suppressing invasions or insurrections, unless it shall in the same bill levy a special tax to pay the interest annually." This was a very clear intimation that it will be contrary to public policy to sell the bonds of this State at less than par.

The above amendment of 1916, sec. 4, Art. VIII, and the legislation enacted by the Legislature of 1917 in pursuance thereof, as above cited, were intended to protect the taxpayers of all the municipalities of this State by forbidding the sale of their bonds at less than par. It is much to be deprecated that just now when we are on the eve of the issue of a flood of bonds for roads, schools, and other purposes (many, but not all, of which will be necessary) by the State, counties, and municipalities the protection intended and afforded by the above constitutional provision, and the legislation thereunder, shall be held for naught by the bare majority of one vote in this Court. The amendment was long debated, and its purport as a protection to the taxpayers against financial com-

binations, which would force the sale of these bonds at less than par was well understood when it was adopted by the people at the polls.

The effect of this decision will be very great, for the taxpayers of our municipalities will now be left "to the uncovenanted mercies" of great combinations of capital which can at will make money tight when these bonds are to be sold by the municipalities, and will retail them at far enhanced prices. The promoters of every cause who desire the issue of these bonds will be ready to yield to any demand for sales at far less than par. For one, I cannot look upon the prospect without the gravest fear for the future consequences.

If the 6 per cent bonds of such wealthy and prosperous towns as Goldsboro and Tarboro can thus already be forced down to 96 and 94, what will the bonds of less fortunate towns bring when the oncoming flood of bonds are issued?

There is much credit due to Mr. Phillips for the very able and thoughtful argument which he made in behalf of the observance of the constitutional amendment which has been so recently adopted for the protection of the taxpayers in the municipalities of our State.

BROWN, J., concurs in this opinion.